The opinion of the Court was delivered by
Johnstone, J.
The Chancellor has properly observed, that this is not a case where the borrower of money at *428 usurious interest comes to be relieved from the literal performance of his contract: but a case where the holder of the contract comes into Court to enforce it according to the legal effect of its terms. In such cases, the contract is enforced only according to its legal validity.
The Chancellor has concluded, from the evidence, that the sum advanced by Mrs. Martin was by way of loan to the obligor of the bond, and not by way of purchasing the instrument from Stewart; and that the bond was continued and passed over to her at an usurious discount, as her security for this loan. We cannot discover that, in drawing this conclusion of fact, he has erred: and, therefore, according to the settled practice of this Court, his decision must stand.
Assuming the correctness of this position, the Chancellor’s legal deduction is unquestionable, that the debt contracted by the borrower is not to be measured by the face of the bond, but by the amount actually advanced on it. So the statute of 1830, 6 Stat., 409, expressly declares: and the statute is the law of the case.
Here it may be permitted to make a few observations upon the connexion between this statutp and the pre-exist-ing statute of 1777,4 Stat., 364, which it partially repeals and modifies. The latter makes the reservation of a greater interest than seven per cent, per annum upon loans or forbearance, unlawful; and declares all securities created for such purpose to be utterly void; and goes on to provide a forfeiture of treble the value of the loan : making the borrower competent to prove the offence, in any suit, brought on the bond, &c. The statute of 1830, does not repeal this prior statute generally, or throughout, but only so much of it as imposes the penalty of treble the amount loaned, &c., and so much as declares the securities taken to be utterly void: and provides that the lender may recover the principal, or sum actually loaned, forfeiting the residue of the security as well as all interest and costs. That is, a loan at a rate exceeding seven per cent, per annum, is left unlawful, *429 as it was before, and the usurious interest, and even lawful interest, are forfeited. It is a restriction of the former enactment avoiding the whole instrument; it is only partially avoided.
As I have said, the Chancellor has correctly restricted Mrs. Martin to the principal advanced by her. This was the legal consequence of her own act of usury. And so far we approve his decree.
But the defendants have appealed, because he did not further restrict it by the amount actually loaned by Stewart, the original holder of the bond.
The bond was created for the purpose of raising money: and such securities, being tainted with usury, (though now, since the Act of 1830, only partially tainted,) have been uniformly held to carry the statutory blight with them into the hands of all persons who come in as privies to the contracting parties, however innocent they may be.
As the bond, in Stewart’s hands, was affected by his usury, it was impossible for his assignee to take the bond from him for more than it was legally worth to him. The transfer did not baptise it of that usury. It was good, under the statute, only for the money he actually loaned, without interest.
It is not perceived how any effect can be imparted to the bond in the hands of the assignee, different from what it had in Stewart’s hands. It was the old contract, vitiated and reduced as it was by the first act of usury, not changed in terms or in character, which passed over to a new owner. If Stewart had sold it to Mrs. Martin, her contract of purchase would have been good to make her legal owner of the security; but it would still have been a security, under the statute, only for the amount Stewart advanced on it.
This is admitted to be the effect of a long list of decisions on the subject, from Payne vs. Trezevant, 2 Bay, 23, and Solomons vs. Jones, 1 Treadway, 144, to the present time.
But the case of Odell vs. Cook, (see a collection of cases, 3 *430 Stat., 783,) is relied on, on the other side. There is but a very imperfect note of the case to be found. It represents that “when the indorser of a note, made to raise money at an usurious interest, represents to a puchasen that it is a business note, made for a bona fide consideration, and the maker is present, and acquiesces, it is a fraud upon the purchaser, and they are both liable.” It would be very unsafe to rely on a case so loose as this, in opposition to our otherwise unbroken current of decisions.*
As an authority for the position that Stewart could have changed the effect of the bond by any representations he could have made, the case is totally unsupported. As an authority that it would have made the obligor more liable on the bond, had he represented it as untainted with usury, it is in direct conflict with Solomons vs. Jones. And it must be recollected that in this case, when Mrs. Martin comes to claim her legal rights, she must not stop short of evidence sufficient to change the law of the instrument. But the evidence is, not that the obligor represented the bond to be good or invalid, usurious or otherwise, but simply promised to pay it punctually, according to the new usurious contract he was about to make, not with & purchaser, but a lender.
If by any representations a borrower of money can make, he can take the taint of usury from his vicious contract, he has discovered a method by which he may evade the statute; and it is set aside and repealed, not by the legislature, but by an individual.
The effect of all this, however, is only to reduce the principal of the bond, not by taking off it both the discounts deducted by Mrs. Martin and by Stewart, but only the larger *431 of the two, so as to reduce the bond to lowest point of principal. By adding to the larger of the' two discounts all the other payments actually made on the bond, the sum legally due on it will be ascertained.
It is ordered, that the decree be modified accordingly: and let the cause be remanded to the circuit for taking the necessary orders.
O’Neall, C. J., concurred.

 If this case is understood, it related to an original emission of the security ; and it was held that the maker and endorser, by misrepresentation, conspired to sell it to a purchaser, instead of borrowing money on it. If the case is applicable, it is only applicable to the transfer of the bond to Stewart. But the Chancellor settles that matter by his conclusion of fact, that that was not a sale, but a loan.